LANSTRUM ET AL., RESPONDENTS, *v.* ZUMWALT ET AL., RESPONDENTS; FIDELITY & DEPOSIT COMPANY OF MARYLAND, APPELLANT.

(No. 5,690.)

(Submitted May 23, 1925. Decided June 9, 1925.)

[237 Pac. 205.]

*Sureties—State Highway Projects—Road Contracts—Assignments—Insolvency of Contractor—Rights of Parties—Subcontractors.*

Sureties—Road Contracts—Assignment of Moneys Due Contractor—Rights of Parties.
 1.   Under sections 8203 and 8207, Revised Codes of 1921, the surety on a bond of a road contractor given the state highway commission pursuant to section 1790 acquired an equity in the earnings of the contractor remaining in the hands of the commission, superior to that of a bank to which the contractor had made an assignment of moneys due him under the contract as security for loans extended, and was entitled to have the funds retained by the commission applied in satisfaction of labor and material claims, payment of which was secured by the bond, before any portion of it was paid to the assignee.

Same—Assignment—Assignee Chargeable With What.
 2.   Where the assignment of funds to become due one who contracted with the state highway commission to construct a road expressly referred to the contract, the assignee bank was chargeable with knowledge of the contents of the contract; the assignee was further chargeable with notice of the fact that before entering upon the work the contractor was required to furnish the bond provided for by section 1790, Revised Codes of 1921, and of the rights of the surety and the liabilities of the commission.

Same—Labor and Material—Bond Inures to Benefit of Subcontractor.
 3.   A surety bond of a contractor, conditioned for the payment of all claims for material furnished and labor done, inures to the benefit of a subcontractor as well as to materialmen and laborers.

Highways, 29 C. J., sec. 349, p. 611, n. 35; sec. 351, p. 612, n. 49.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

SUIT by George W. Lanstrum and others, as the State Highway Commission of Montana, against W. A. Zumwalt and

---

 1.   Right of surety on contractor's bond as against assignee of fund, see note in **L. R. A.** 1918D, 736.

another, copartners doing business under the firm name and style of Zumwalt & Duckers, and the Fidelity & Deposit Company of Maryland and others. From the decree, defendant last named appeals. Reversed and remanded.

*Messrs. Day & Choate,* for Appellant, submitted a brief; *Mr. E. C. Day* argued the cause orally.

The surety of the contractor has a lien on all of the contract price remaining in the hands of the highway commission, after the completion of the work, and has the right to have such money applied in payment of unsatisfied claims for labor and material, which lien is paramount to that of any assignment made by the contractor of any part or portion of the contract price, either due or to become due as the work progresses under the contract. (*First Nat. Bank of Seattle* v. *City Trust etc. Surety Co.,* 114 Fed. 529, 52 C. C. A. 313; *Prairie State Bank* v. *United States,* 164 U. S. 227, 41 L. Ed. 412, 17 Sup. Ct. Rep. 142 [see, also, Rose's U. S. Notes]; *Illinois Surety Co.* v. *Galion,* 211 Fed. 161; *In re Scofield Co.,* 215 Fed. 45, 131 C. C. A. 353; *Greenville Sav. Bank* v. *Lawrence,* 76 Fed. 545, 22 C. C. A. 646; *Title Guaranty etc. Co.* v. *Dutcher,* 203 Fed. 167; *Henningsen* v. *United States Fidelity & Guaranty Co.,* 143 Fed. 810, 74 C. C. A. 484; affirmed in 208 U. S. 404, 52 L. Ed. 547, 28 Sup. Ct. Rep. 389 [see, also, Rose's U. S. Notes]; *Columbia Digger Co.* v. *Sparks,* 227 Fed. 780, 142 C. C. A. 304; *Labbe* v. *Bernard,* 196 Mass. 551, 14 L. R. A. (n. s.) 457, 82 N. E. 688; *People's Nat. Bank* v. *Corse,* 133 Tenn. 720, 182 S. W. 917; *Duncan* v. *Gulliet,* 62 Colo. 220, 161 Pac. 299; *Fulton Nat. Bank* v. *Fulton,* 144 Ga. 691, 87 S. E. 1023; *National Surety Co.* v. *Berggren,* 126 Minn. 188, 148 N. W. 55.)

The contract was for the benefit of laborers and materialmen. It expressly provides that "No moneys, payable under the contract or any part thereof, except the estimate for the first month or period, shall become due and payable, if the

committee so elects, until the contractor shall satisfy the said Committee that he has fully settled or paid for all materials and equipment used in or upon the work and labor done in connection therewith, and the Committee, if it so elects, may pay any or all such bills, wholly or in part, and deduct the amount so paid from any monthly or final estimate, excepting the first estimate.'' In such cases as this it is quite uniformly held that the contract and bond inure to the benefit of those doing work and furnishing material, and gives to them a right to maintain an action to enforce the payment of their claims. (*Algonite Stone Mfg. Co.* v. *Fidelity & Deposit Co.,* 100 Kan. 28, L. R. A. 1915D, 722, 163 Pac. 1076; *Blyth-Fargo Co.* v. *Free,* 46 Utah, 233, 148 Pac. 427.)

The surety is subrogated to the rights of laborers and materialmen. (*Electric Appliance Co.* v. *United States F. & G. Co.,* 110 Wis. 434, 53 L. R. A. 609, 85 N. W. 648; 7 Am. & Eng. Ency. of Law, 345–348; *Town of Gastonia* v. *McEntee-Peterson Engineering Co.,* 131 N. C. 359, 42 S. E. 857; *Patton* v. *Carr,* 117 N. C. 176, 23 S. E. 182; *Whitney* v. *Cowan,* 55 Mass. 626.)

*Messrs. Stewart & Brown,* for Respondent, First National Bank of Stevensville, submitted a brief; *Mr. S. V. Stewart* argued the cause orally.

This is not a proceeding on the part of the state to protect itself against liens or liabilities, but is an interpleader action brought by the state which by such action announces itself as not interested. We think the character of the action is important here for two reasons: First, because in an interpleader action each party must rest his case upon his own pleadings and proof. He cannot assert or claim rights which the interpleader had but which he has waived by depositing the money in court. Especially important is it in this case where it is a paid surety and one who is attempting to urge the rule of subrogation. Secondly, because the fact of

the state filing an interpleader action evinces its failure to exercise its option or right of election contained in paragraph 64 of the contract.

The state never asserted any right as against this assignment, and with the exception of the ten per cent reservation, which was a positive reservation, it always paid upon the assignment.

Being an interpleader action and the state not having exercised its right to apply the funds as it sees fit, it evidently does not propose that the paid insurer, or anyone else, shall apply these funds, but that the rights thereto shall be determined in an action at law between the parties, to-wit, the interpleader now before the court.

It has been expressly held that the effect of interpleader action on the party who might assert rights to the money is a waiver of these rights, and the disposition of the funds thereafter must rest upon the rights and proof of the various claimants of their own right to the fund, not upon any rights which the party depositing the fund might have had or exercised. (*White* v. *Turner,* 217 Pa. St. 25, 66 Atl. 89.)

The question of attempting by direct action (just as the paid insurer here would attempt by indirect) to compel a public corporation to see to the satisfaction of materialmen's claims out of funds which the public corporation might elect so to use has been before the courts before and, as one eminent text-writer has said, has been criticised and the right to such an action has been denied. (22 R. C. L. 623; *Lombard Governor Co.* v. *Baltimore,* 121 Md. 303, Ann. Cas. 1915B, 865, 48 L. R. A. (n. s.) 678, 88 Atl. 140; *Merwin* v. *Chicago,* 45 Ill. 133, 92 Am. Dec. 204; *Lesley* v. *Kite,* 192 Pa. St. 268, 43 Atl. 959.)

In a well-considered case from New Jersey reported in the Lawyer's Reports Annotated it was expressly held that the provisions in a contract for public work entitling the municipality to retain a certain percentage of the contract

price until claims of labor and materialmen, of which it had been given notice, have been paid does not prevent assignment by the contractor after completion of the work. (*United States Fidelity & G. Co.* v. *Newark,* 79 N. J. Eq. 584, 37 L. R. A. (n. s.) 575, 81 Atl. 758; *Shannon* v. *Hoboken,* 37 N. J. Eq. 123; *Essex Freeholders* v. *Lindsley,* 41 N. J. Eq. 189, 3 Atl. 391; see, also, *Somers Brick Co.* v. *Souder,* 70 N. J. Eq. 388, 61 Atl. 840. There are some decisions which seem to hold *contra,* to-wit, in Massachusetts, Texas and Missouri. However, an examination of these cases discloses that they were based upon positive clauses of the particular contracts rather than an optional clause as here found.

This is a clause that is for the benefit of the state and which the state might waive. "It was a condition which the city might waive at its pleasure, and under which no other party could claim any rights." (*Weisemair* v. *Buffalo,* 57 Hun, 48, 10 N. Y. Supp. 569.)

*Mr. Lester H. Loble,* for Cross-appellant Joseph Iten, submitted a brief and made oral argument.

It is a principle of law that an assignee of a contract or the sums to become due and payable under a contract, takes only the rights of the assignor; and if those rights are subject to certain provisions of the contract protecting materialmen and laborers, that these unpaid materialmen and laborers have a prior right to the funds involved as against the assignee. (*Maryland Casualty Co.* v. *Shafer,* 57 Cal. App. 580, 208 Pac. 194; *Thorn & Hunkins Lime etc. Co.* v. *Citizens' Bank,* 158 Mo. 274, 59 S. W. 109; *City of St. Louis* v. *Keane,* 27 Mo. App. 642; *Castro* v. *Malcolm,* 66 Cal. App. 635, 226 Pac. 976.) The assignors being entitled to no moneys until the unpaid labor and material claims have been paid, their assignee, the bank, is likewise entitled to nothing until these claims have been fully settled. (*State* v. *Webster,* 20 Mont.

219, 50 Pac. 558; *Maryland Casualty Co.* v. *Shafer*, 57 Cal. App. 580, 208 Pac. 194; *Hipwell* v. *National Surety Co.*, 130 Iowa, 656, 105 N. W. 318.) An assignee who takes with notice of equities in favor of third persons is bound thereby. (*Hardaway* v. *National Surety Co.*, 150 Fed. 465, 80 C. C. A. 283; *Seymour* v. *McKinstry*, 106 N. Y. 230, 12 N. E. 348, 14 N. E. 94; *Carter* v. *Holt*, 28 Cal. App. 796, 154 Pac. 37; *Castro* v. *Malcolm*, 66 Cal. App. 635, 226 Pac. 976.) It is not necessary to show that the assignee had actual knowledge of the equity at the time of the assignment to him; all that is necessary is to show knowledge by the assignee of facts sufficient to put him upon inquiry, which, if pursued, would lead to actual knowledge. (*Derby* v. *United States F. & G. Co.*, 87 Or. 34, 169 Pac. 500, 501; *Clark* v. *Roberts*, 206 Mass. 235, 92 N. E. 461; *Thorn & Hunkins Lime & Cement Co.* v. *Citizens' Bank*, 158 Mo. 274, 59 S. W. 109.)

This appellant, Joseph Iten, having furnished materials and performed work on the project is not only entitled to payment from the fund reserved and retained by the commission under this contract, which fund they paid into court at the time of the commencement of this suit, but likewise Joseph Iten may also look to the Surety Company for payment, for clearly its bond, in clear and unequivocal language, provides for the payment to him for labor done and materials furnished, for which the contractors, Zumwalt & Duckers, are liable in the first instance. (*Fuller & Co.* v. *Alturas School Dist.*, 28 Cal. App. 609, 153 Pac. 743; *United States F. & G. Co.* v. *Marathon Lumber Co.*, 119 Miss. 802, 81 South. 492; *Smith* v. *Mosier*, 169 Fed. 430; *Hipwell* v. *National Surety Co.*, 130 Iowa, 656, 105 N. W. 318; *United States* v. *Jack*, 124 Mich. 210, 82 N. W. 1049; *Fitzgerald* v. *McClay*, 47 Neb. 816, 66 N. W. 828; *Union Sheet Metal Works* v. *Dodge*, 129 Cal. 390, 62 Pac. 41; *Duby* v. *Jackson*, 69 Minn. 342, 72 N. W. 568; *French* v. *Farmer*, 178 Cal. 218, 172 Pac. 1102.

*Mr. Harry H. Parsons* and *Mr. Edward Horsky,* for Respondent L. N. Simons, submitted a brief.

MR. JUSTICE STARK delivered the opinion of the court.

The plaintiffs constituted the state highway commission of Montana, which had general control over the construction of roads and the primary control over the fund known as the "state highway trust fund," and on November 17, 1921, acting through their executive committee, entered into a contract with the defendants Zumwalt and Duckers for the construction of a road in Ravalli county, known as federal aid project No. 120A, which contract, in reference to payments to be made thereunder, contains the following provisions:

"(64) *Scope of Payments.* * * * No moneys payable under the contract or any part thereof, except the estimate for the first month or period, shall become due and payable, if the committee so elects, until the contractor shall satisfy the said committee that he has fully settled or paid for all materials and equipment used in or upon the work and labor done in connection therewith, and the committee, if it so elects, may pay any or all such bills, wholly or in part, and deduct the amount or amounts so paid from any monthly or final estimate, excepting the first estimate."

"(65) *Partial Payments.* The engineer shall make current estimates in writing on or before the 10th day of each month of the materials in place complete and the amount of work performed, * * * in accordance with the contract, during the preceding month, and the value thereof figured at the unit prices contracted. Of the total amount so ascertained, an amount equivalent to ten per centum (10%) of the whole will be retained by the committee until after the completion of the entire contract and the balance, or a sum equivalent to ninety per centum (90%) of the whole, will be certified by the committee to the state treasurer for payment. * * * "

To secure the faithful performance of this contract on their part, the defendants Zumwalt and Duckers furnished a bond to the state with the defendant Fidelity & Deposit Company of Maryland (hereafter referred to as the surety company) as surety, the conditions of which, so far as necessary to be considered on this appeal, were that if the defendants Zumwalt and Duckers "shall in all respects comply with the terms of the contract * * * and * * * their * * * obligations thereunder, * * * and shall well and truly, and in a manner satisfactory to the executive committee of the state highway commission, complete the work contracted for, and shall save harmless the state of Montana, from * * * any liability for payment of wages due or material furnished said contractor, and shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway, all and every sum or sums of money due him, them or any of them, for all such labor and materials for which the contractor is liable, * * * then this obligation to be void or otherwise to be and remain in full force and virtue."

After this contract was entered into, Zumwalt and Duckers arranged with the defendant First National Bank of Stevenville (hereafter referred to as the bank) to finance them in carrying out its terms, and as security for the funds to be advanced to them, on March 11, 1922, made a written assignment to the bank of all moneys due or to become due to them under the terms of said contract, which assignment was duly filed with, received and accepted by the plaintiffs, under which assignment the plaintiffs caused to be paid to the bank, on eight separate occasions between March 23 and September 5, 1922, a total sum of $21,000. Zumwalt and Duckers having become insolvent, were unable to discharge all their obligations for labor and materials furnished under their contract upon its completion, and on July 19, 1923, there was available in the state highway trust fund the sum of $5,192.48,

which was due and owing for work and labor performed and materials furnished under the contract, and each of the above-named defendants (except Zumwalt and Duckers) were claiming the right to receive all or portions of the same, the total claims being in excess of the amount available in said fund for distribution, and the plaintiffs, being unable to determine to whom the same should be paid, brought this action against all of the defendants, stating their willingness to deposit in court warrants of the state of Montana aggregating the total sum so held in the trust fund, payable in such amounts and to such of the defendants as the court might order, and asked that the defendants be required to appear, set forth and establish their several claims and rights to said fund, and that the same should be adjudicated. Of the amount so available in the trust fund, $2,700 represented the ten per cent retained by plaintiffs under the provisions of section 65 of the contract, and the remainder of $2,492.48 was the amount due on the contract as shown by the engineer's final estimate.

By appropriate pleadings, the defendants appeared and set forth their respective claims to the amount available for payment of claims against the defendants Zumwalt and Duckers in said trust fund, the defendant bank set up the assignment from Zumwalt and Duckers to it, that the same was duly filed with and accepted by the proper officers of the state, and that by virtue of advances made to, and for the benefit of Zumwalt and Duckers, there was then due to it the sum of $3,900, besides $295.05 interest on the same, and asked that it be awarded that amount out of said fund.

The defendant surety company asserted that by reason of the provisions of the contract and bond it was the duty of defendants Zumwalt and Duckers to pay all persons in full who had performed labor or furnished materials for use in construction of the highway mentioned in the contract; that Zumwalt and Duckers had not fully complied with their con-

tract until they had paid such persons; that the plaintiffs had rightfully withheld the sum of money available in said trust fund, and that the defendants who had performed labor or furnished material were entitled to payment of their claims out of the money in the hands of the plaintiffs prior to the payment of any sum to the defendant bank upon its assignment, and that no part of said fund was due to Zumwalt and Duckers or their assignee, the defendant bank, until the claims of those who had performed labor or furnished material had been fully paid; that the defendants Zumwalt and Duckers were insolvent, and, unless the money in said trust fund should be applied to the claims for labor and material, it would have no adequate remedy to compel the defendants Zumwalt and Duckers to pay the claims or to reimburse it as surety if it paid those for whose benefit the bond was given; that the bond did not inure to the benefit of the defendant bank, as assignee, and that it could not safely pay the claims of creditors for whose benefit the bond was given, without determination of the amount and extent of its liability, and asked that there be a determination of the amount of each of the claims for labor and material furnished to the defendants Zumwalt and Duckers under the contract, and that, if it should be adjudged to be liable therefor as surety, the plaintiffs be ordered to issue and deliver to the several claimants the amount of their claims before any amount was ordered paid to the defendant bank.

The defendant Joseph Iten, by his answer and cross-complaint, asserted that on the sixth day of December, 1921, he entered into a contract with the defendants Zumwalt and Duckers, under which he agreed to perform certain work and furnish certain materials to be used in connection with their contract for the construction of the road in question; that he had fully completed his contract; that the amount earned thereunder was $6,593.69, upon which there had been paid only the sum of $4,591.50, leaving a balance of $2,002.19,

no part of which had been paid, and asked that the amount due him be ordered paid out of the sum remaining in the said trust fund, and for judgment against the defendant surety company for any amount which might still remain due him after crediting on his claim whatever might be received thereon from said trust fund.

The other defendants who asserted any claims to the amount available in the trust fund set out their claims thereto, and the same were not disputed.

The case was tried before the court without a jury. There was no dispute in the facts. It was admitted that the $2,700, representing ten per cent of the amount retained by plaintiffs under the provisions of section 65 of the contract, should be apportioned among the defendants who had furnished labor and material to the defendants Zumwalt and Duckers in performing their contract, in preference to the claim of the defendant bank under its assignment.

In the decree entered, the court ascertained the amount due to the several claimants for work and labor performed, and directed the distribution of the retained $2,700 among them in proportion to their several amounts, and directed that each of them, except the defendant Joseph Iten, should have judgment against the defendant surety company for the unpaid balances of their respective claims, but held that the defendant Joseph Iten was not entitled to such judg-ment. Out of the balance of the fund amounting to $2,492.48, the court awarded the plaintiffs their costs amounting to $17.80, and directed that the balance of $2,474.68 should be paid to the defendant bank upon its assignment from the defendants Zumwalt and Duckers.

From this decree the defendant surety company has ap-pealed, and takes the position that the court should have directed the entire sum of $5,192.48 to be distributed *pro rata* among the several labor and materials claimants, and was in error in holding that the defendant bank was, by

virtue of its assignment from Zumwalt and Duckers, entitled to receive all of said fund above the $2,700 retained by plaintiffs under the provisions of section 65 of the contract, in preference to said labor and materials claimants.

The portion of the decree which makes distribution of the $2,700, retained percentage under the provisions of section 65 of the contract, is not questioned by any party to this proceeding.

The provisions of section 64 which gave the plaintiffs the right to withhold payment of the amount earned under the contract, except the first estimate, until the contractors had satisfied them that all work and material had been paid for, and to pay for such work and materials and deduct the amount so paid from the amount due under the contract, is entirely distinct from, and additional to, the authority given to plaintiffs in section 65; that is, the plaintiffs had the right to retain these funds as security that the contractors would comply with the terms of their contract and pay for all work and labor performed and materials used in the construction of the road.

Under the terms of the bond, the defendant surety company [1] bound itself to pay all such claims for labor, material and equipment in the event the contractors failed to do so. Section 8207, Revised Codes of 1921, provides: "A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor, or by a cosurety at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not." And under the provisions of section 8203 a surety may require his creditor to proceed against the principal, "or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden," and upon the creditor's neglect to do so the surety is exonerated to the extent to which he is prejudiced.

Under these statutes the right of the surety company to receive the benefit of the security which the plaintiffs then had, or should thereafter acquire, constituted an equity in whatever was earned by the defendants Zumwalt and Duckers under the contract, which came into existence at the time it executed the bond for the contractors. This was a right conferred upon it by statute, and could not be taken away without its consent.

When the bank loaned its money to the defendants Zum-[2] walt and Duckers, it did something which it was not obliged to do. The assignment which it took as security made express reference to the contract, and it was chargeable with notice of its contents; that is, it must be held to have known of the provisions of section 65, under which the plaintiffs retained ten per cent of the amount earned for the purposes therein indicated, and also of the provisions of section 64, which gave the plaintiffs the right to retain any money earned until all labor and material furnished in performance of the contract had been paid, and to pay for the same and deduct the amount from any monthly or final estimate. It was also chargeable with knowledge of the fact that, before entering upon the work provided for in the contract, the defendants Zumwalt and Duckers had been required to execute a bond for the faithful discharge of their duties thereunder, as provided in section 1790, Revised Codes of 1921, and was likewise chargeable with knowledge and notice of the rights of the surety and the liabilities of the plaintiffs under the bond, established by sections 8203 and 8207, *supra.* (*Derby* v. *United States F. & G. Co.,* 87 Or. 34, 169 Pac. 500.)

In taking the assignment the bank acquired only such rights to the funds assigned as the defendants Zumwalt and Duckers possessed (*Thorn & Hunkins Lime etc. Co.* v. *Citizens' Bank of St. Louis,* 158 Mo. 274, 59 S. W. 109), and, having accepted the assignment, was chargeable with notice

of the surety company's equity, and bound thereby. (*Harda-way* v. *National Surety Co.*, 150 Fed. 465, 80 C. C. A. 283.)

The provision of the contract for the retention of the ten per cent of the value of the work until the completion thereof became a part of the contract of suretyship, and was as much for the indemnity of the surety as for the plaintiffs. (*Prairie State Bank* v. *United States*, 164 U. S. 227, 41 L. Ed. 412, 17 Sup. Ct. Rep. 142 [see, also, Rose's U. S. Notes].)

To the extent that the provisions of section 64 were observed, the burden of the surety company was lightened. This was a remedy for insuring payment of the labor and material claimants, which plaintiffs were authorized to pursue, but which was not available to the surety company. While the record does not affirmatively show that the plaintiffs had elected to pursue this remedy, when they brought the fund into court and demanded that the various claimants establish their right to it, the effect of their action was the same as though they had made a formal reservation of the fund for the purposes authorized by section 64. So far as the rights of the surety company were concerned, it was not so much a question of what plaintiffs had in fact done as what they had a right to do. (*First National Bank of Seattle* v. *City Trust, Safe Deposit & Surety Co.*, 114 Fed. 529, 52 C. C. A. 313.)

Under these conditions the defendants Zumwalt and Duckers, by assigning to the defendant bank the amount due or to become due under the contract, did not create an equity therein in favor of the bank, which was prior and paramount to the equity of the surety company in the fund created by statute, and which came into existence when it executed the bond. (*Wasco County* v. *New England Equitable Ins. Co.*, 88 Or. 465, Ann. Cas. 1918E, 656, L. R. A. 1918D, 732, 172 Pac. 126.)

From this it follows that the defendant surety company was entitled to have all of the amount available in the trust

fund, due and owing for work and materials furnished under the Zumwalt and Duckers contract, applied to the satisfaction of the labor and material claims, before any portion of it should be paid to the defendant bank.

By cross-assignments of error, the defendant Joseph Iten [3] has questioned that portion of the court's decree which denied him the right to have a judgment against the defendant surety company for the balance remaining due to him after having credited upon his account his *pro rata* of the amount in the trust fund available for distribution among the labor and materials claimants. At the trial it was stipulated that the defendant Iten, under the contract set out in his answer and cross-complaint, had performed labor and furnished materials to the defendants Zumwalt and Duckers under their contract to the extent of $6,593.69, upon which there had been paid the sum of $4,591.50, leaving a balance of $2,002.19 due the defendant Iten. The court found that the defendant Iten was entitled to share *pro rata* in the distribution of the $2,700 fund, but held that he was not entitled to a judgment against the surety company for the balance of the amount due him.

While there are some cases holding to the contrary, the weight of authority and better reasoning are to the effect that the surety bond of a contractor, conditioned as the one in question for the payment of all claims for material and labor furnished, inures to the benefit of a subcontractor who furnishes such labor and material, as well as to other materialmen and laborers. (*United States to Use of Hill* v. *American Surety Co.*, 200 U. S. 197, 50 L. Ed. 437, 26 Sup. Ct. Rep. 168 [see, also, Rose's U. S. Notes]; *Smith* v. *Mosier* (C. C.), 169 Fed. 430; *Hipwell* v. *National Surety Co.*, 130 Iowa, 656, 105 N. W. 318.) To hold to the contrary would allow the original contractor to avoid all liability on the bond by merely subletting all of the work.

It is our opinion that the bond of the surety company in this case inured to the benefit of the defendant Joseph Iten, and that he is entitled to a judgment against it for any balance that may remain due him after the application to his claim of his portion of the trust fund involved in this proceeding.

Our conclusion upon the whole case is that the $5,192.48 available in the state highway trust fund, for distribution under the Zumwalt & Duckers contract, less the amount of plaintiffs' costs, should be applied *pro rata* to the payment of all claims for work, labor and material furnished under the contract, before any payment is made to the defendant bank under its assignment, and if, upon such distribution, the claim of the defendant Joseph Iten is not paid in full he is entitled to a judgment against the defendant surety company for the balance.

The judgment of the district court is reversed and the cause remanded, with direction to enter a decree in accordance with the conclusions above expressed.

*Reversed and remanded.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.