## STERNBERG CO., Inc., v. STATE NAT. BANK OF TEXARKANA, ARK.

### No. 7154.

Circuit Court of Appeals, Fifth Circuit.
March 23, 1934.

Harry P. Gamble, of New Orleans, La., for appellant and cross-appellee.

Kenneth C. Barranger, of New Orleans, La., for appellee and cross-appellant.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellee is the assignee of $7,759.61 of claims against a subcontractor. On these claims, made up of $6,533.33 rental of a dredge, and $1,062.28 salary, it intervened in a suit against the original contractor and his surety on a public works bond. Section 270, title 40, USCA.[1] It had judgment for 52 per cent. of its claim. The contractor appeals because appellee got too much; appellee cross-appeals, because it got too little.

The contractor attacks as unfounded all of the rental and part of the salary claim. Its point against the rental claim is that it was neither intended nor agreed that the work should be looked to for its payment. It insists that there was a definite agreement as to it that it should be paid by crediting the amount on notes the claimant had given the subcontractor. The salary claim is contested only as to $249.67. It is claimed that this much of the salary accrued after the job had ended, and that while a just demand against the subcontractor generally, it is not within the bond. We overrule these contentions. The case was tried by the District Judge on waiver of jury. The points appellant makes here were advanced below. There, on evidence amply sustaining the findings, they were decided adversely.

Appellee, complaining of the judgment limiting its recovery to 52 per cent., insists that, as the general contractor, appellant was liable without limit for debts incurred on the work. It argues in the alternative that its pro rata of the bond should have been figured on the basis of the claims filed in the suit and without taking account of claims appellant compromised and took up before suit.

Appellee's first contention is directly in the face of the statute and all of the decisions under it. We reject it. The contractor, though liable over to the surety on the bond, stands to creditors of the subcontractor just as the surety does, liable only on the bond and for its amount. The claims appellee holds against the subcontractor are not personal claims against appellant, the general contractor. They are claims against it just as they are against the surety, only by virtue and to the extent of the liability imposed by statute. This extends to and protects claimants and their assignees, but only in the amount and as provided in the act. Arnold v. United States, 263 U. S. 427, 44 S. Ct. 144, 68 L. Ed. 371; Miller v. American Bonding Co., 257 U. S. 304, 42 S. Ct. 98, 66 L. Ed. 250; Illinois Surety Co. v. United States, 240 U. S. 214, 36 S. Ct. 321, 60 L. Ed. 609; Strong v. American Fence Con. Co., 245 N. Y. 48, 156 N. E. 92, 94. Its other contention, though not so easily disposed of, is, we think, equally without merit. Its disposition involves two inquiries: (1) In a suit on the bond, where the claims exceed the penalty, may claims against the subcontractor, compromised and taken up by the general contractor more than six months after final settlement under the contract, but before the filing of suit, be taken into account in determining the pro rata distribution of those filing? (2) If this may be done, are they to be taken into account at their full amount, or only at the amount paid in settlement, when that amount is more than the proportion which their claims bear to the whole amount of unpaid claims? The claims compromised aggregated $6,684.25; they were compromised for $5,700, or 84 per cent.

---

[1] This section exacts a bond from each government contractor conditioned to pay laborers and materialmen. It authorizes them to intervene in suits brought by the United States, and if no suit is brought by the United States within six months after final settlement, to sue in its name within twelve months after settlement. It provides that only one action shall be brought, of which notice shall be given to known creditors and by publication, and that any creditor may file his claim in such action. The United States is given priority. All creditors, however, are put on an equality without regard to the time of filing their claims by the provision: "If the recovery on the bond shall be inadequate to pay the amounts found due to all of said creditors, judgment shall be given to each creditor pro rata." It authorizes the surety to pay into court for distribution among "said claimants and creditors" the full amount of the bond and provides that such payment shall release it.

■ The District Judge thought they were to be taken at their full amount just as though they had been filed. He treated their presentation to and adjustment by the contractor as having the effect of filing them.

Appellee urges upon our attention that the suit is on a statutory bond. United States, to Use of Zambetti, v. American Fence Con. Co. (D. C.) 15 F.(2d) 449; United States v. Stewart (C. C. A.) 288 F. 187; United States v. Montgomery Heating & Ventilating Co. (C. C. A.) 255 F. 683. It presses upon us the statutory nature of the suit, the precise provisions in the act as to its prosecution and disposition, the exacting, the jurisdictional nature of its requirements, and the necessity for compliance with them to obtain the benefit of its provisions. United States v. McCord, 233 U. S. 157, 34 S. Ct. 550, 58 L. Ed. 893; Illinois Surety Co. v. U. S., supra; United States for Use of Spencer v. Massachusetts Bonding & Ins. Co. (C. C. A.) 18 F.(2d) 203; Antrim Lbr. Co. v. Hannan (C. C. A.) 18 F.(2d) 548; Mandel v. United States (C. C. A.) 4 F.(2d) 629. It urges that it is settled law that claimants, creditors of a subcontractor, may recover on the bond if they file their claims though the subcontractor may have been fully paid, and though there are other claimants who have not filed within the time. Mankin v. United States, 215 U. S. 533, 30 S. Ct. 174, 54 L. Ed. 315; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; and authorities supra. It calls to our attention the provisions of the statute and the decisions under it, that only those filing claims within the time limit may recover, and to its precise provisions that if the recovery on the bond should be inadequate to pay the amount found due to all creditors who have intervened judgment shall be given to each of said creditors pro rata. It urges, too, that to permit a contractor to buy up claims for the purpose of using them in a suit on the bond would encourage trafficking in them with resultant oppression and overreaching of those for whose benefit the bond was required. Finally, it cites as authority for its position United States v. National Surety Co. (D. C.) 298 F. 536, in which the holding was that claims of materialmen and laborers acquired for the contractor's account could not be recovered on in a suit against his surety on a public works bond. None of these considerations are sufficient in our opinion for the judgment appellee seeks. It is true enough that the suit is at law on the bond, that it is a statutory one, and that the statutory provisions must be complied with. It is true also that this is a remedial statute, and that its provisions have been uniformly construed to effect the end desired, an equitable distribution among furnishers of labor and material for public work of the amount provided by the bond liability of contractor and surety. It is further true, however, that the liability of surety and contractor is measured by the bond, and is satisfied by an equitable distribution of its amount. It is not disputed that the claims the contractor compromised and acquired here are valid claims. It may not be questioned that if, instead of acquiring them by compromise the contractor had required the claimants to bring, or intervene in, a suit, they would have been taken into account in determining the pro rata in the accounting. We think the same thing has in effect occurred. Here is no case of a contractor trafficking in accounts, and speculating on the necessities of the creditors by buying up claims against the subcontractor for less than the pro rata due them, as was the case in United States F. & G. Co. v. Eichel (C. C. A.) 219 F. 803, 804. These claims were compromised on a basis of 84 per cent. By compromising them as it did, instead of having the claims marshaled in court, the contractor stands to pay on account of claims against his subcontractor not merely the full amount of his bond, $11,600, but nearly $14,000. The contractor has not been benefited, the claimants have not been injured, by his action. No diminution of appellee's pro rata recovery was asked because the contractor was being required to pay more than the amount of his bond. If it were contending here that because it had paid some of the claimants more than their pro rata it should pay others less to make its loss up, the case would stand differently. All the contractor asks is that the claims that it acquired by compromise stand with the ones in suit in determining their pro rata. We think this is not too much to ask. Appellee's contention is for the strict letter of the act. It would defeat appellant because the claims it took up were not made the subject of intervention or suit. We do not think that the act sustains it. The statute does provide that there shall be one action, notice of which shall be given to all creditors, and that any creditor may file his claim therein within a year. The statute provides, too, that if the bond is inadequate to pay the amount found due to all of "said creditors," judgment shall be given to each pro rata. It seems to us, however, that it is no unreasonable construction of the statute to say that

filing the claim with and obtaining settlement of it from the contractor, when that fact is pleaded and proven in the suit brought against it on the bond, is in effect to file the claim in the bond suit. Certainly such a holding cannot be said to be unreasonable. Certainly the result it brings about is entirely equitable. It promotes, instead of discouraging, the prompt payment of those in need. It is good administration. Cf. Third National Bank v. Detroit Fidelity & Surety Co. (C. C. A.) 65 F.(2d) 548. To hold that the filing with the contractor direct for the purpose of obtaining settlement after six months, when the right of the claimant to sue has matured, has less efficacy than a filing in court, is to subordinate the end, payment of the claims, to the means provided for securing that end. It is to stick in the bark. In re Emmet, 216 N. Y. 273, 110 N. E. 610.[2] In Strong v. American Fence Co., supra, the principle that the contractor's liability is limited to pay the pro rata claims against a subcontractor whether the claims are filed or not was recognized. It was there said of a suit for damages for failure to give bond: The recovery of the plaintiff "cannot exceed in any event the pro rata share that would be his if a bond * * * had been given in fulfillment of the promise. * * * The defendant will then be at liberty to show in reduction of the damages that other claimants, still unpaid, may share in the security. The aggregate liability to all must be within the limit of the penalty."

Under the statute, as it was before the 1905 amendment, Judge Putnam, in a well-reasoned and much-cited opinion, took this view. He held that claims acquired by either the surety or the contractor before suit must be taken into account in determining the amount of the recovery in a suit on a public works bond. American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717. The case appellee cites; United States v. National Surety Co., supra, has no application here. It correctly decided that though, as to claimants, the liability of the surety and contractor is the same, as between themselves the contractor is primarily liable, and he may not assert against the surety claims he has ac-

quired which, as between them, it was his primary duty to pay. This is but another way of stating that the surety on such a bond is subrogated to the rights and position of the contractor when it has paid. Hardaway v. National Surety Co., 211 U. S. 552, 29 S. Ct. 202, 53 L. Ed. 321; Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547; American Surety Co. v. Carbon Timber Co. (C. C. A.) 263 F. 295.

We think it clear that since the contractor paid more than 52 per cent. for the claims it acquired by compromise, the amount it would have had to pay on them had they been filed, they may be taken into the account at their face in determining the pro rata recovery in the suit.

We find no fault with the judgment as to the appeal and the cross-appeal. It is affirmed.

---

[2] This case limits People v. Metropolitan Surety Co., 211 N. Y. 107, 105 N. E. 99. In his dissenting opinion in that case, Miller, page 102 of 105 N. E., has this to say of the surety on such a bond: "The surety could have determined and paid all claims arising on the bond before this suit was brought. It did not have to wait to be sued. Its liability arose on the default of its principal. A suit against it would be based on its default in failing to discharge that liability. The mere fact that an exclusive remedy was provided for its default in not paying as agreed did not make its liability contingent on the event of such a suit. To be sure, the claimant could not sue for six months after the final completion of the contract. A suit may not be brought on a debt not due, but the debt is none the less a fixed liability."