**ANCHORAGE SAND & GRAVEL CO., Inc.**

v.

**ALASKA DOCK & BRIDGE BUILDERS, Inc. et al.**

No. A8039.

District Court, Alaska
Third Division, Anchorage.

April 5, 1954.

Juliana D. Wilson, Anchorage, Alaska, for plaintiff.

Edward V. Davis (of Davis, Renfrew & Hughes), Anchorage, Alaska, for defendants.

FOLTA, District Judge.

The defendant Alaska Dock & Bridge Builders, Inc. (hereinafter referred to

subcontractor) entered into a subcontract with the defendant Max J. Kuney Co. (hereinafter referred to as prime contractor) which provided, in part, that it would not be effective

> "unless the subcontractor shall, prior to commencing work, furnish 100% performance and payment bond * * * The amount of each bond to be * * * $30,134".

The bond furnished by the subcontractor to the prime contractor is in the amount of $60,368, conditioned in part as follows:

> "Now, therefore, if the principal shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements of said subcontract * * * then this obligation to be null and void; otherwise to remain in full force and effect".

The application for this bond recites that the kind and amount of bond required are: "Contract Bond, $60,368; Labor and Material Bond * * *" The fact that the bond furnished by the subcontractor is in precisely double the amount fixed by the subcontract for "each bond", warrants the inference that the parties intended to secure both "performance and payment". The plaintiff discontinued furnishing gravel when he could not obtain payment, and notified the parties defendant. Thereafter, Sheahan, whose authority as the defendant surety's agent had in the meantime been terminated, but of which the plaintiff was not informed, induced the plaintiff to resume deliveries of gravel by telling him that the subcontractor would not be paid until completion of the job, which, incidentally appears to be contradictory of the express terms of the subcontract providing for periodic payments and by guaranteeing payment of the plaintiff's claim against the subcontractor, purportedly on behalf of the defendant surety. Thus assured, the plaintiff resumed making deliveries of gravel until completion of the job, only to discover that the promise was not to be fulfilled, and now seeks to recover for the total amount of gravel furnished.

At the outset it should be noted that the plaintiff is not suing on the prime contractor's bond and is not relying on the provisions of the Miller Act, 40 U.S.C.A. 270(a)–270(d). The statutory remedy of that act, not having been invoked in time, was lost. Nor has the plaintiff any recourse against the prime contractor because of the lack of privity of contract. The complaint as to this defendant, therefore, must be dismissed.

 Suing as a donee-third-party beneficiary of the subcontractor's bond, the plaintiff contends that the parties to the bond intended to protect materialmen and, indeed, it would not be unreasonable to conclude that the prime and subcontractors intended to give materialmen additional security because of the absence of a right to a lien against public property. National Surety Co. v. Hall-Miller Decorating Co., 104 Miss. 626, 61 So. 700, 46 L.R.A.,N.S., 325; Cove Irrigation Dist. v. American Surety Co., 9 Cir., 42 F.2d 957, certiorari denied 282 U.S. 891, 51 S.Ct. 103, 75 L.Ed. 785. In support of its contention, the plaintiff points to the fact that the bond expressly incorporates the provisions of the subcontract, one of which requires performance and payment bonds in the amount of $30,184 each, and also relies on Sheahan's testimony that the subcontractor applied for a bond in accordance with the subcontract and that such a bond was furnished. While the authority of Sheahan was limited to the execution of bonds, and hence he could not bind the defendant surety by his interpretation or representations, Metropolitan Casualty Ins. Co. v. Potomac Builders' Supply Co., 61 App.D.C. 255, 61 F.2d 407; Standard Accident Ins. Co. v. Simpson, 4 Cir., 64 F.2d 583, his testimony nevertheless sheds light on the intent which may be gleaned from the circumstances surrounding the execution of the bond. It is undisputed that the plaintiff furnished material to the subcontractor because of Sheahan's rep-

resentations, but aside from the possible liability for breach of warranty of authority, it is immaterial to this controversy that plaintiff was thus induced. It is enough that plaintiff furnished gravel to the subcontractor to enable it to complete the work required in the subcontract. The material was within the terms of the subcontract and of the bond. The real question then is whether the bond, construed in the light of the acts of the parties and of their intent, can reasonably be interpreted as a promise to pay the materialmen of the subcontractor. If so, plaintiff should recover in this action. 4 Corbin, Contracts 175, Sec. 800; 162–185, Secs. 798–802.

■ The defendant surety vigorously contends that the bond and subcontract construed together, do not imply a promise to pay materialmen. The subcontract required the subcontractor to furnish materials, but by the general federal rule this alone is not enough to raise an inference of an implied promise to pay for them, at least not such a promise as will be enforceable by a donee-third-party beneficiary. Fairly illustrative of this rule are Babcock & Wilcox v. American Surety Co., 8 Cir., 236 F. 340; U. S. for Use of National Regulator Co. v. Montgomery Heating & Ventilating Co., 5 Cir., 255 F. 683; U. S., to Use of Zambetti v. American Fence Const. Co., 2 Cir., 15 F.2d 450; U. S., to Use of Stallings v. Starr, 4 Cir., 20 F.2d 803. But cf. Pacific States Electric Co. v. United States Fidelity & Guaranty Co., 109 Cal.App. 691, 293 P. 812; Wheeler, Osgood & Co. v. Everett Land Co., 14 Wash. 630, 45 P. 316; Mayes v. Lane, 116 Ky. 566, 76 S.W. 399; Crowley v. United States Fidelity & Guaranty Co., 29 Wash. 268, 69 P. 784,

holding that a bond guaranteeing faithful performance of a subcontract to furnish labor and materials implies a promise to pay therefor. The latter view appears to be favored by the U. S. Court of Appeals for this Circuit, for in Cove Irrigation District v. American Surety Co., 42 F.2d 957, certiorari denied 282 U.S. 891, 51 S.Ct. 103, 75 L.Ed. 785, involving Montana law, that Court said, 42 F.2d at pages 958–959:

"Independently, and apart from the Martin decision [Martin v. American Surety Co., 74 Mont. 43, 238 P. 877], we would have little difficulty in holding the contention without merit. It is said that the contract between the district and the original contractor does not impose any obligation upon the latter. Such an obligation it was unnecessary to express, for it inheres in and inevitably arises out of the relation necessarily implied."

It would also appear that the trend is toward the more liberal construction represented by this view. 4 Corbin on Contracts, 179–184, Sec. 801.

■ I find, therefore, that the parties to the bond and subcontract intended to benefit materialmen by providing this additional security as a substitute for the right to a lien accorded them in all other cases, but which is unavailable as against public property. That this additional security was economically beneficial to the promisee as well is of no particular significance.

Accordingly, I conclude that the plaintiff is entitled to recover as a donee-third-party beneficiary against the defendant surety and that the surety is entitled to a recovery over against the subcontractor, in accordance with the terms of the application for the bond.